*J. M. Flagg*, for the appellant.

*A. Ellison*, for the appellee.

---

## HARRISON *v.* PRICE.

ACTION FOR CRIMINAL CONVERSATION.—In such an action it is not competent for the defendant to plead in bar a want of virtue in the plaintiff and his wife, and it does not need to be pleaded at all in order to authorize evidence of the fact to be produced in mitigation of damages.

PRACTICE—BILLS OF EXCEPTIONS.—Where special leave of the Court is given to file bills of exceptions on or before the first day of the next term, and such bills are not filed within that time, but are filed thereafter *during* the next term, without any further leave of the Court as shown by its record, such bills will not be considered as any part of the record in this Court. This Court will not presume that further time was given, even if the Court below had power to grant it.

Harrison v. Price.

NEW TRIAL—MISCONDUCT OF JUROR.—The misconduct of a juror, in order to be sufficient to justify the granting of a new trial, must be gross and must have resulted in manifest injury to the complaining party. The mere fact that a juror, pending a trial, and whilst the jury were separated for dinner, expressed the opinion that the jury would find for the plaintiff, without other improper conduct, would not be sufficient ground for a new trial.

APPEAL from the *Hamilton* Circuit Court.

PERKINS, J.—*Isaac C. Price* sued *Thomas J. Harrison* to recover damages for criminal conversation had between said *Harrison* and the wife of said *Price;* and he recovered 900 dollars. A demurrer was sustained to a paragraph of the defendant's answer, setting up want of virtue in *Price* and wife. That paragraph purported to go in bar of the action. It contained no matter in bar; at most, but matter in mitigation of damages. Such matter is not pleadable at all, so far as we are aware, in an action for criminal conversation, and is not necessarily pleaded in any action, in order to its being given in evidence. See *Swinney* v. *Nave et ux.*, at this term.

*Harrison* moved for a new trial for the following reasons, which motion the Court overruled:

1. For misconduct of one of the jurors.

2. On account of surprise at the testimony of two witnesses, touching the number of conversations he had had with *Price*, and the fact of his having written notes to *Mrs. Price*.

3. For errors of law occurring on the trial.

4. Because the verdict is not justified by the evidence.

We will notice these grounds for a new trial in the inverse order of the assignment.

We can not consider the fourth, because the record does not purport to contain all the evidence.

We can not consider the third, because the record does

not show that errors complained of, as occurring on the trial, were excepted to at the time.

The cause was heard in parts by two judges, in the Circuit Court, after having been certified, by mutual consent of the parties, from the Common Pleas, in which Court the action was commenced.

At the *September* term, 1861, *John Davis, Esq.*, an attorney of the Court, presided, and ruled upon the demurrers, and sustained a motion of defendant, *Harrison*, to suppress the depositions of *Elizabeth Foster* and *Margaret Price.*

At the *March* term, 1862, Judge *Buckles* presided at the trial of the cause, and took the motion for a new trial, made at that term, under advisement till the next term, and gave special leave to the defendant till the first day of the next term to file bills of exception to the rulings made at that term. This leave appears of record. Neither on the first nor any other day of the said next term was an extension of time for filing the bills asked, nor does the record show that any extension of time was given by the Court, even conceding the power of the Court, for the purposes of this case, to make such extension. But on the 10th day of that term, says the clerk, the bills were filed. The bills, then, were not filed within the leave granted by the Court, and, hence, were not a part of the record, unless the fact that they were filed in term time raises the presumption that an extension of time was granted by the Court, if such extension could be granted. If the bills had been filed at the term of the Court at which the exceptions were taken such presumption would arise from the fact of filing. *Johnson* v. *Bell*, 10 Ind. 363. As they were not filed till after the expiration of that term, such presumption did not arise. There are two modes of giving time to file bills of exceptions, general and special; the former relates to time given in the term at which the exception is taken, may be given by parol, and, hence, may

be presumed to have been given. The latter relates to time given extending beyond the term at which the exception is taken, and must be given specially, and appear by entry on the record. The code provides, 2 G. & H. p. 209, § 343, that " the party objecting to the decision must except at the time the decision is made; but time may be given to reduce the exception to writing, but not beyond the term, unless by special leave of the Court." The Court must evidence this special leave by an entry of record. The Court speaks, after the term, by its record. This is the law, and it may be a necessity where different judges hear different parts of a cause, and an appellate Court reviews the whole. This disposes of all of the bills of exception except that filed on the overruling of the motion for a new trial. It does not appear, therefore, that the alleged errors at the trial were excepted to at the time. Perhaps the objection as to the misconduct of a juror, and the point as to the surprise, appear in that. At all events, without so deciding, we will notice them, as if they did appear.

1. The misconduct of the juror. It consisted in this: During the time of the hearing of the evidence on the trial, while the jury were temporarily separated, perhaps, for dinner, *Thomas J. Reed,* one of the jurors, asked one *John J. Justice,* a stranger, how he thought the case would go. *Justice* replied to him that from outside rumor the jury ought to find for the defendant, but from the appearance of the jury, he thought it would find for the plaintiff. *Reed* replied, "yes, by God, I know it will."

We do not think any cause is here shown which would justify a Court of error in reversing the judgment of the Court, which heard the evidence and was satisfied with the verdict, in refusing to disturb that verdict. *Blackstone* says, it must be gross misconduct of the jury, and that that misconduct must have injured the complaining party. 2 Black. Com. p. 387, *et seq.* See, also, 2 Graham & Wat. on New

Trials, p. 572, cited by counsel on both sides.   Also, 3 Ind. 577.

Nothing appears showing that *Reed* was not a competent juror; nothing showing any tampering with the jury; nothing showing corruption; nothing showing that the deliberations of the jury were interfered with, or were improperly conducted, as to the defendant.   Suppose the idea had arisen in the mind of the juror, *Reed,* without having had a word with any of his fellow jurors, from the impression he had observed the evidence was naturally making upon them, that their verdict would be for the plaintiff, but he had not given utterance to the thought to any one, till after the verdict, and then had said to some one that he knew, before the evidence was through, that the verdict would be for the plaintiff; would the verdict have been set aside for that ?   He could not help the involuntary action of his own mind.   Now, all the difference is, in the case as it stands, that he indiscreetly uttered that idea before the trial was completed ; but he did not so utter the thought as to influence the verdict or injure the defendant.   He committed a contempt of Court, but that was not necessarily a ground for a new trial.

2. As to the surprise at the testimony of *Price* and *Jameson,* touching the number of conversations *Harrison* had had with plaintiff, and the fact as to his having written notes to his wife.   *Harrison's* own deposition, taken a month before the trial, was in evidence.   He testified as to the number of these conversations, and that he had never written a note to *Mrs. Price.*   On the trial, witnesses testified that he had written notes to her and that he had had four conversations with *Price.*   He says, if a new trial is granted he will reaffirm his former statement and bring another witness to contradict *Price* on one point.

Now, all this fails to show, we think, a case of legal surprise; and the remedy for it, proposed, according to his

affidavit for a new trial, is only by again contradicting, by cumulative evidence, the statements already once contradicted; but new trials are rarely granted to enable witnesses to be impeached, or for the production of merely cumulative evidence, nor where the proposed additional evidence will not probably change the result of the case. See 2 G. & H. p. 211, *et seq.*, notes.

If, in this case, we regard the record as containing all the evidence, the verdict seems to be, beyond question, right against the defendant for some amount; and as we do not regard the evidence as in the record, we are bound to presume the verdict right; and without the evidence given, we could not say the proposed evidence would change it. We can not regard the damages excessive.

*Per Curiam.*—The judgment is affirmed, with 5 per cent. damages and costs.

*Joseph E. McDonald, A. L. Roache* and *D. Moss,* for the appellant.

*Hendricks & Hord,* for the appellee.