THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENTS, *v.* EDWARD KELLY, APPELLANT.

*Communication between the judge and the jury after its retirement — when it does not furnish a ground for setting aside the verdict—how the error, if any, in making such a communication is to be corrected — Code of Criminal Procedure, secs. 467, 465, 331.*

The defendant was indicted, tried and convicted for an assault with intent to kill. After the jury had retired to deliberate upon their verdict, and while they were under the charge of an officer, a note or communication was sent from one of the jurors to the judge who presided at the trial. The note was taken to him and some writing or note was made by him and sent back to the jury. No proof was given as to the contents of either communication.

*Held,* that as there was no evidence to show that the note or communication received from or sent to the jury had any relation to the case they were considering, and as the presumption was that the judge had not violated his duties, the exchange of the said notes furnished no ground for setting aside the verdict. (BRADY, J., dissenting.)

Such an error cannot be corrected by a motion in arrest of judgment, under sections 467 or 331 of the Code of Criminal Procedure, nor by a motion for a new trial under section 465 thereof. (Per DANIELS, J.)

*It seems,* that to enable the defendant to raise an objection to the interchange of the said communications he should have had a statement of the fact inserted in the case, so that an opportunity might have been afforded to the judge to make an explanation disclosing the nature and extent of the communication; any erroneous ruling of the judge thereon could then have been reviewed upon appeal. (Per DANIELS, J.)

APPEAL from a judgment of the Court of General Sessions of the city and county of New York, convicting the defendant of an assault with intent to kill.

*John H. McKinley,* for the appellant.

*John Vincent,* assistant district attorney, for the respondent.

DANIELS, J.:

The exceptions taken in the case do not appear to present any point which can materially benefit the defendant. The inquiry made of the witness Strack and answered by him sufficiently showed his friendly relations with the prosecuting witness, and no more would have been proved by him if he had been permitted to answer the question, when he handed him the $300 which he collected and

gave him. The important inquiries which could by their answers in any manner affect his credit had all been previously responded to. Neither was it important in any view of the case to prove that Strack previously had difficulties with other persons, or that his general reputation as a man of violence should be introduced into the case. Neither of these inquiries had any possible connection with the issue which was being tried, and the evidence was not offered to impeach his credit. The other objections and exceptions are still more clearly without any legal foundation and need not, therefore, be considered.

After the close of the trial a motion was made in arrest of judgment, but as it was for neither of the causes mentioned in sections 467 or 331 of the Code of Criminal Procedure, it could not regularly be entertained as such. It was not made upon anything appearing by the indictment or in the record of the proceedings in the case, and it was not, therefore, a motion in arrest of judgment as that has been declared and defined. But it was in fact as well as in form a motion for a new trial made upon affidavits. But as such it was not within either of the subdivisions of section 465 of the Code of Criminal Procedure, for it was not made for either of the causes for which, within that section, a motion for a new trial can regularly be entertained. The motion was made upon the ground that after the jury had retired to deliberate upon their verdict and while they were under the charge of the officer for that purpose, a note or communication was sent from one of the jurors to the recorder, who presided at the trial; that it was taken to him, and some writing or note was made by him and sent back to the jury. What this was, whether it related to the case, to the trial, the convenience, or physical wants of the jury, was not made to appear. In fact there was no intimation or evidence whatever from which it could be inferred that it related in any manner to the case which the jury at the time were considering. But if a statement of the fact itself had been inserted in the case an opportunity would then have been afforded to the recorder to make an explanation disclosing the nature and extent of the communication. That was the course which regularly should have been pursued, for, as was held in *Maurer* v. *People* (43 N. Y., 1), it was a part of the trial if the communication related to the case, and that course should have been taken regularly

to present the point instead of a motion for a new trial upon affida-vits under section 465 of the Code of Criminal Procedure, for neither of the subdivisions of that section have provided for such an application.

But assuming the application in this form to have been regular, it did not entitle the defendant to another trial of the issue. For that purpose it should have been made to appear, with some degree of probability at least, that the note or communication sent to the jury had some relation to the case they were considering. It is not to be presumed in the absence of proof that such was its character. For to indulge in that presumption without evidence would be to presume that the recorder violated his duties as a judge, and that presumption is not without proof, to be entertained. The presump-tion of the law, on the contrary, is that "no official person acting under oath of office will do aught which it is against his official duty to do, or will omit to do aught which his official duty requires should be done." (*Mandeville* v. *Reynolds*, 68 N. Y., 528, 534.)

And that the communication did not relate to the case may be assumed from the denial by the recorder of the motion upon the affidavits for a new trial. For, if it had, it was his duty under the authorities, then probably brought to his attention, to set aside the verdict, which he undoubtedly would have done if the communica-tion had any relation to the case. To set aside the verdict without such proof would also violate another equally well settled rule of law, and that is that error is not to be presumed but must be shown. And in all the cases, with one exception, where a like point has been successful, it was made to appear as a matter of fact that some communication was made by the justice or judge presiding at the trial to the jury in the absence of the party concerning the case. (*Maurer* v. *People*, *supra*; *Taylor* v. *Betsford*, 13 Johns., 487; *Plunkett* v. *Appleton*, 51 How., 469.)

It is true that very broad language was used upon this subject in *Sargent* v. *Roberts* (1 Pick., 337). But it must be understood and construed as addressed to the case which was then before the court, and that was a case in which an important communication relating to the issue which the jury had in charge, was made to them after they had retired and in the absence of the parties. *Hoberg* v. *State* (3 Minn., 262) is the only exception to this rule which has been

found relating to this subject. In that case it appeared that the judge visited the jury in their room and that was held to be improper, although it was made to appear that he was there simply to inform them that they must come into court if they required any further instructions. This is an extreme case, carrying a legal technicality to a point where it could be of no substantial benefit either to the accused or the public. For it was entirely evident that no possible injury could result to him from what was shown to have taken place. This case has not been followed by any other authority, and the legal propriety of the decision has been doubted by a distinguished and reliable author upon criminal law (1 Bish. [2d ed.], § 1000) where it was stated that all the courts would not hold such an irregularity, where nothing wrong was meant or shown, to be a ground for a new trial, even though the individual making the communication was an indifferent person.

And that it should not be a ground for a new trial is further supported by the general rule, that official misbehavior or the irregularities of jurors themselves will not allow the verdict to be set aside where no probable injury has been produced by it to the party complaining. (*Commonwealth* v. *Roby*, 12 Pick., 496, 519; *Whelchell* v. *State*, 23 Ind., 89 ; *Harrison* v. *Price*, 22 id., 165.)

And this wholesome general principle has been made applicable to motions for new trials in criminal cases. For by the language of section 465 of the Code of Criminal Procedure, the verdict is only to be set aside on a motion for that purpose, when the substantial rights of the accused have been prejudiced by the act. And by section 542 of the same Code it has been extended to the disposition of appeals which are required to be determined, " without regard to technical errors or defects, or to exceptions, which do not affect the substantial rights of the parties." And as it is not to be presumed that the recorder was guilty of misconduct in sending the communication which he did to the jury, as he would have been if it related to the case, which it was not shown to have done, these provisions are directly applicable to the disposition of this appeal. The inquiry of the jury may have been concerning the temperature of their room, the probability of its continuance, their desire for refreshments, or the length of time to which the session of the court would be extended, or some other subject connected with

their own convenience, for such inquiries are frequently made by jurors of the court, and as they do not relate to the case itself are considered proper subjects of an informal answer. And they may be answered in that manner without in the least degree prejudicing any right or interest of the accused. If this was not a communication of that description the fact itself should in some manner have been shown, and it could have been done by a direct inquiry of the recorder himself, or by including a statement of it in the case when an explanation of the subject would have been pertinent and proper. No injustice is done to the accused by requiring certainly as much as that from him, before an application of this character should be allowed to prove successful. The public interests in the administration of justice should not be defeated, as they would be by so extreme and technical construction of this act as would be given to it if the inference should be drawn that the recorder had as a fact misconducted himself on this occasion. The facts themselves logically warrant no such conclusion, and the rule established by all well considered authorities precludes its adoption. The judgment therefore should be affirmed.

DAVIS, P. J., concurred.

BRADY, J. (dissenting):

The defendant was indicted and convicted of a felonious assault and sentenced to ten years' imprisonment in the State prison. After the jury had retired, and while they were deliberating, a written communication was sent from them to the presiding justice, to which a written reply was sent. And on the day on which the prisoner was taken into court to be sentenced, and before such sentence was pronounced, the defendant's counsel moved for arrest of judgment on the ground that the verdict was contrary to the weight of evidence; that the court erred in refusing to charge the jury as requested by him; and for the reason that a communication had been sent to and answered by the court, in the absence of the prisoner, and without the consent of his counsel. No explanation was given either by the district attorney or the learned justice presiding at the time the motion was made, of the character of the communication or the response, and therefore whether it was

material or immaterial does not appear. It is not denied that such a communication was sent to the learned justice and responded to by him; but it is claimed by the district attorney, in reference to the legal effect of such an incident, that there is no suggestion that the communication was of a nature to prejudice the defendant or that it had any bearing upon the case, but on the contrary, that it was something probably relating to some trivial question, and that the point predicated of it is therefore valueless. The answer to this suggestion is, that the character of the communication was unknown either to the defendant or his counsel, and therefore it was impossible for either of them to say what it was; and if speculation may be indulged in, it may just as well be that it referred to the case as that it related to some trivial circumstance.

An examination of the cases on the subject leads to the conclusion that the point presented by the appellant's counsel is well taken. In the case of *Taylor* v. *Betsford* (13 Johns., 487), the court said that the only error to be noticed was that the justice went into the room with the jury at their request, privately and apart from the parties, to answer certain questions proposed to him by the jury. The court said that they had repeatedly held such conduct to be erroneous, and that whether the information given by the justice was material or had any influence upon the verdict of the jury, was a matter into which it would not inquire. This case was cited with approbation in the case of the *Watertown Bank and Loan Company* v. *Mix* (51 N. Y., 558), in which the court decided that a party moving for a new trial, upon the ground of a communication between the judge and the jury without his knowledge or assent, was not bound to show affirmatively that such communication tended to his injury.

In the case of *Plunkett* v. *Appleton* (51 How., 469) it was declared and upon a consideration of all the authorities, which are quite numerous, that after the jury retires for deliberation it is error for the judge trying the cause to send a communication to them. And in the case of *Hoberg* v. *State of Minnesota* (3 Minn., 262) it was held that after the jury retired to consider their verdict, the judge had no right to communicate with them without the consent of, and apart from, the prisoner and his counsel, and that the rule applied even to cases where the communication from the judge to

the jury was merely to inform them that if they wished any information on matters of law they should come into court and ask it.

The result of a consideration of these authorities is that if any communication be made to the jury by the presiding justice, in a criminal trial on an indictment amounting to felony, the prisoner is not bound to show, in order to entitle him to a new trial, that the communication was to his prejudice ; and if there be no evidence to show the character of the communication, as in this case, it necessarily follows that the verdict must be set aside and a new trial granted.

Judgment affirmed.